UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRELL HURT, #181895,

                Petitioner,

                                        CASE NO. 2:13-CV-14539
v.                                    HONORABLE DENISE PAGE HOOD

THOMAS MACKIE,

                Respondent.

_____/

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT, DISMISSING THE PETITION FOR A WRIT
OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I. INTRODUCTION

Michigan prisoner Derrell Hurt ("Petitioner") has filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of

his constitutional rights.  Petitioner was convicted of second-degree murder and possession

of a firearm during the commission of a felony in the Wayne County Circuit Court.  He was

sentenced to life imprisonment without the possibility of parole on the murder conviction

and a consecutive term of two years imprisonment on the felony firearm conviction in 1992.

This matter is before the Court on Respondent's motion for summary judgment

seeking to dismiss the petition as untimely under the one-year statute of limitations set forth

at 28 U.S.C. § 2244(d).  For the reasons set forth, the Court grants Respondent's motion

and dismisses the petition as untimely.  The Court also denies a certificate of appealability

and denies leave to proceed *in forma pauperis* on appeal.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from the shooting death of an innocent bystander

during a shoot-out in Detroit, Michigan on September 7, 1991.  The Michigan Court of

Appeals described the relevant facts, which are presumed correct on habeas review, 28

U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant was bound over on open murder and felony firearm charges
> following the death of Altez McCray, caused by a gunshot wound he suffered
> while driving his blue Ford Escort down Nevada Street in northeast Detroit
> in the early evening 'of Saturday, September 7, 1991. It is undisputed that
> McCray was an innocent victim, uninvolved in the events leading up to his
> death, which included a shoot-out about a block away from where he was
> shot.
>
> The prosecution's theory of the case apparently was that before McCray's
> shooting, defendant was involved in altercations or confrontations with a
> number of men (and planned to rob a necklace and a car), followed by a
> shoot-out and flight from the shoot-out by defendant, an unidentified friend,
> and several other men. The prosecution argued that defendant, who had
> earlier in the evening mentioned taking a car, tried to steal McCray's car,
> perhaps in order to escape the- area where the shoot-out occurred, by
> pointing a gun at him while running down Nevada. The prosecution presented
> 18 witnesses, only one of whom witnessed McCray's shooting and identified
> defendant as the shooter.
>
> The defense theory was primarily that the prosecution's key witness, Sylvia
> King, did not reliably establish defendant was the shooter, and that other
> witnesses presented conflicting testimony regarding defendant's involvement
> in the shoot-out preceding McCray's death, whether defendant had a gun at
> the shoot-out and thereafter, and what defendant was wearing.
>
> Several witnesses gave accounts of the altercation between defendant and
> his friend and William Waddell and his friends. Some testified defendant had
> a gun and participated in the shooting; others said defendant did not have a
> gun and that he ran from the scene when the shooting started.
>
> As to the events after the shoot-out, Sylvia King, a passenger in an
> automobile being driven by her sister, -Geraldine Bradford, testified that she
> and her sister were traveling east on Nevada at about 25-30 miles an hour.
> They had just passed Conant when King noticed a blue Ford Escort coming
> the wrong way out of the street on her left, Wexford, and turning onto

2

Nevada. The blue Escort pulled onto Nevada as their car went by. King then saw two men running towards her from the left side. One guy was "running wild in the street," and the other person was running closer to the curb. The "crazy man" was in the middle of Nevada, a little towards the north side. She looked back and saw this man pull a gun out of his pocket and point it at the man in the car behind her. The man in the car then swerved toward the gunman, apparently to scare him. The man with the gun continued running and fired several shots at the car after it swerved into him. King testified the man was pointing the gun at the Escort, holding it extending two hands out "like a professional." She identified defendant as the shooter and testified defendant was about a small car length away from her car when the shooting occurred. The driver then lost control of the car, hit a utility pole located between Wexford and Binder, and flipped over. The victim was later identified as Altez McCray. The two men then ran down Wexford. King's sister drove past three or so houses, turned the car around and went back to the accident scene, where they waited for the police to arrive.

At a photographic show-up about ten days after the accident, King identified defendant as the "running man" and not the shooter, and picked out two other persons, one as the shooter. At the preliminary examination on October 10, 1991, seeing defendant in person, King changed her mind and stated that defendant was actually the shooter, and the other man she had previously identified as the shooter was the runner. King said she remembered that the shooter had high cheekbones and when she saw defendant's high cheekbones she recognized him as the shooter. She stated that although she only saw defendant for a few minutes, defendant ran near her car, and she physically turned around to watch what the two men were doing and watched them out of the rear window for a couple of minutes. King testified that she continued to watch defendant from the time she first noticed him on the street, until the time he ran away on Wexford. It was still daylight and the street lights were not on. In her statement to police, and at trial, King said defendant was wearing a red cap, a black, white and red jacket and sweat pants or jeans. The runner was wearing a black or blue hat and a black and white, or blue and white, jacket.

Geraldine Bradford, King's sister, testified to seeing two men running by her car and the car behind her swerve to the left, hearing a gunshot, and seeing the car behind her go out of control. Bradford could not identify either of the men who were in the street.

Charles Madison testified that he could not remember what defendant was wearing. Rod Scott did not remember if defendant was wearing a hat that evening. He did state that defendant's friend was wearing a hat and a jumpsuit. Misha Bolton did not remember what defendant was wearing. Barbara Dumas testified that defendant was wearing a red and white striped

or red and blue shirt. She also testified she did not think anyone but defendant was wearing red. Christina Dumas testified that defendant was not wearing a red hat. Myrna Bell also did not remember if defendant was wearing a hat. She testified that he was wearing dark colored clothing, and that defendant's friend was wearing a blue and white jogging suit made out of thin material and no hat.

Altez McCray's wife, Yolanda McCray, testified he was on leave from Marine Corps boot camp when he was shot. Shirley Goodwyn, a friend of McCray's and his aunt testified McCray stopped by to say hello on the evening of September 7 and had left her house and was on his way to his aunt's, who had been McCray's guardian since he was six years old. His aunt lived on Helen, just off Nevada.

Dr. Laning Davidson, a forensic pathologist at the Wayne County Medical Examiners Office, examined McCray on September 9, 1991. He testified that McCray had two acute types of injuries: minor abrasions on his face which were consistent with hitting one's head in a car accident, and a gunshot wound to the back. Dr. Davidson testified McCray died as a result of the gunshot wound.

*People v. Hurt*, No. 156969, *1-2 (Mich. Ct. App. Oct. 20, 1995) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the trial court's denial of a directed verdict motion and the sufficiency of the evidence, the conduct of the prosecutor, and the admission of other acts evidence. The court denied relief on those claims and affirmed his convictions. *Id.* at *3-4. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Hurt*, 453 Mich. 875, 554 N.W.2d 5 (Aug. 30, 1996).

On October 12, 2009, Petitioner filed a motion for relief from judgment in the state trial court raising the following claims: (1) trial counsel was ineffective for not requesting a corporeal lineup, for failing to object to, or seek suppression of, a suggestive in-court identification, and for not requesting an expert identification procedure witness to testify to

4

the identification process and the mental state of the witness at the time of the incident; and (2) appellate counsel was ineffective for not raising the issue of trial counsel's ineffectiveness on direct appeal. The trial court denied the motion, finding that the claims lacked merit such that Petitioner had failed to establish cause or actual prejudice under Michigan Court Rule 6.508(D)(3). *People v. Hurt*, No. 91-011149 (Wayne Co. Cir. Ct. April 13, 2010). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hurt*, No. 303626 (Mich. Ct. App. Nov. 16, 2011) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Hurt*, 492 Mich. 853, 817 N.W.2d 94 (July 24, 2012).

Petitioner dated his federal habeas petition on October 23, 2013. In his petition, he raises the same ineffective assistance of trial and appellate counsel claims presented to the state courts on collateral review. Respondent now moves for summary judgment asserting that the petition should be dismissed as untimely under the one-year statute of limitations applicable to federal habeas actions. Petitioner has not filed a reply.

### III.  SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000). The moving party bears "the burden of showing the absence of a genuine

5

issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable fact finder could return a verdict in his or her favor. *Sanders*, 221 F.3d at 851. The summary judgment rule applies to habeas proceedings. *Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

## IV.  DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Petitioner filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA includes a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. The statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

6

pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  A habeas petition filed outside the time period prescribed by this section must be dismissed.  *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (dismissing case filed 13 days after the limitations period expired); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

Petitioner's convictions became final after the AEDPA's April 24, 1996 effective date. The Michigan Supreme Court denied leave to appeal on direct appeal on August 30, 1996. Petitioner's convictions became final 90 days later, *see Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009) (a conviction becomes final when "the time for filing a certiorari petition expires"); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007); S. Ct. R. 13(1), on or about November 28, 1996.  Accordingly, Petitioner was required to file his habeas petition on or before November 28, 1997, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

Petitioner did not file his motion for relief from judgment with the state trial court until 2009.  The one-year period expired well before he sought state post-conviction or collateral review.  A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no time remaining to be tolled. *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). The AEDPA's limitations period is only tolled while a prisoner has a properly filed motion for post-conviction or collateral review under consideration.  28 U.S.C. § 2244(d)(2);

*Hudson v. Jones*, 35 F. Supp. 2d 986, 988 (E.D. Mich. 1999). The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner does not allege that the State created an impediment to the filing of his habeas petition or that his claims are based upon newly-discovered evidence or newly-enacted, retroactively applicable law. His petition is therefore untimely and barred by the statute of limitations.

If Petitioner believes that one of the statutory factors should serve to re-start the one-year period, his petition is still untimely. Petitioner waited more than one year after the conclusion of state court collateral review (his motion for relief from judgment proceedings) to institute this action. The Michigan Supreme Court denied leave to appeal on collateral review on July 24, 2012. Petitioner did not date his federal habeas petition until October 23, 2013, nearly 15 months later.

The United States Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court has further verified that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's

8

control." *Jurado*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

Petitioner makes no such showing. The fact that he is untrained in the law, is (or was) proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain time does not warrant tolling. *See Allen*, 366 F.3d at 403 (ignorance of the law does not justify tolling); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse" for failure to follow legal requirements); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). Petitioner's contention that his habeas claims have merit also does not justify tolling the limitations period. *Holloway*, 166 F. Supp. 2d at 1191. Petitioner fails to demonstrate that he is entitled to equitable tolling under *Holland*.

Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin v. Perkins*, _ U.S. _, 133 S. Ct. 1924, 1928 (2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005); *see also Holloway,* 166 F. Supp. 2d at 1190. As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006). A valid claim of actual

9

innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In keeping with Supreme Court authority, the Sixth Circuit has also recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Petitioner makes no such showing. His own self-serving, conclusory assertions of innocence are insufficient to support an actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). Petitioner fails to demonstrate that he is entitled to equitable tolling of the one-year period. His petition is therefore untimely and must be dismissed.

## V.  CONCLUSION

Based on the foregoing analysis, the Court concludes that the petition is untimely. Accordingly, the Court **GRANTS** Respondent's motion for summary judgment **(#12)** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists

10

would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

Having undertaken the requisite review, the Court concludes that jurists of reason could not find the Court's procedural ruling that the petition is untimely debatable. Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager